IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIE V. FLORES,

        Plaintiff,

v.                                                                                                                                          No. 1:17-cv-00603-KRS

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND

Plaintiff seeks review of the Commissioner's determination that she is not entitled to disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b), the Court has considered Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum, filed November 28, 2017 (Doc. 17), the Commissioner's response in opposition, filed December 19, 2017 (Doc. 19), and Plaintiff's reply, filed January 15, 2018 (Doc. 22). Having so considered, the Court FINDS and CONCLUDES that Plaintiff's motion is well-taken and should be granted.

### I. STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## II. BACKGROUND

On December 19, 2013, Plaintiff filed an application for Social Security Disability Insurance benefits, alleging that she had been disabled since July 1, 2013, due to fibromyalgia; facet arthritis; degenerative disc disease; and scoliosis of the upper spine. (AR 131, 146, 150). Following a hearing held on March 18, 2016, Administrative Law Judge ("ALJ") Gerald L. Meyer concluded that Plaintiff was not disabled and her claim was denied.

In making his decision, ALJ Meyer employed the required five-step sequential disability analysis,[1] first finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 1, 2013.[2] (AR 18). At step two, ALJ Meyer found that Plaintiff has the severe impairments of fibromyalgia; osteoarthritis; and back problems. (*Id.*). At step three,

---

[1] *See* 20 C.F.R. § 404.1520 (outlining the five-step analysis).
[2] The ALJ also determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016. (AR 18).

the ALJ determined that none of Plaintiff's impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment. (AR 19).

ALJ Meyer next assessed Plaintiff's Residual Functional Capacity ("RFC"),[3] finding that Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b). The claimant can occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds. She can stand and/or walk about six hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never climb ropes, ladders, or scaffolding. The [claimant] cannot tolerate exposure to extreme [c]old, fumes, noxious odors, gases, chemicals, or poor ventilation.

(AR 19).

At the time of his RFC determination, ALJ Meyer had before him evidence in the form of Plaintiff's testimony; medical records and opinion statements provided by Plaintiff's treating physician, Dr. Frank O'Sullivan, and Plaintiff's Nurse Practitioner ("NP"), Elaine Montano; and disability assessments conducted by non-examining state agency physicians at the initial and reconsideration levels of review.[4]

As is relevant here, Plaintiff testified to disabling pain caused, in large part, by fibromyalgia (AR 31-44). Both of Plaintiff's medical providers completed medical source statements wherein they, too, identified a variety of functional limitations caused by Plaintiff's pain. In this regard, Dr. O'Sullivan opined that Plaintiff can stand/walk less than two hours in an eight hour workday; must periodically alternate between sitting and standing to relieve pain; and can lift/carry less than ten pounds frequently and occasionally. (AR 330). He further noted that Plaintiff has "moderate" limitations in regard to performing activities within a schedule;

---

[3] The RFC gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). *See also* 20 C.F.R. § 404.1545(a)(1).
[4] The non-examining physicians assessed Plaintiff's physical health as well as her mental health. This opinion, however, addresses only the physical assessments of record.

maintaining physical effort for two hour segments; and completing a normal workday and workweek without interruptions from pain or fatigue and without unreasonable rest periods. (AR 329).

Similarly, NP Montano opined that Plaintiff can stand/walk for less than two hours in an eight hour workday; sit for less than four hours in a normal workday; can lift/carry less than ten pounds occasionally and less than five pounds frequently; and that she is limited in her abilities to push, pull, handle, and reach. (AR 340). NP Montano also identified "marked" limitations in Plaintiff's ability to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual; maintain physical effort for long periods of time; sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal workday and workweek without interruptions from pain. (AR 341).

In contrast, the agency physicians did not assess Plaintiff with severe pain related limitations and, instead, developed RFC assessments that virtually mirror ALJ Meyer's RFC determination.[5] *See* AR 54-55, 66-67. Predictably, then, ALJ Meyer afforded "little probative weight" to Plaintiff's testimony (AR 24), "little weight" to the statements provided by Dr. O'Sullivan and NP Montano (AR 23-24), and remarked, without assigning weight, that he "generally concurs with the reconsideration assessment of the state agency medical examiners." (AR 24).[6]

---

[5] At this juncture, it should be noted that the agency physicians' findings at the initial level of review were adopted by the agency physicians at the reconsideration level of review. As a result, there is very little variation between the two agency assessments. *See* AR 48-58, 60-70.

[6] The ALJ was more specific in terms of discussing the mental health opinions of the agency examiners, stating that "The undersigned agrees with the opinions of the claimant's mental health conditions as the medical evidence of record supports non-sever [sic] mental impairments only." (AR 23).

With Plaintiff's RFC assessment at hand, ALJ Meyer proceeded to step four of the disability analysis where he concluded that Plaintiff was able to perform her past relevant work and, therefore, was not disabled. (AR 24). The ALJ's decision became final when, on April 4, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-4). *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (explaining that if the Council denies a request for review, the ALJ's opinion becomes the final decision). *See also* 20 C.F.R. § 404.900(a)(1)-(5).

Plaintiff now asks the Court to reverse the Commissioner's decision, arguing that the ALJ (1) improperly assessed the opinion evidence submitted by her medical providers; (2) failed to consider her subjective allegations of pain and other symptoms in accordance with *Luna v. Bowen*, 843 F.2d 161 (10th Cir. 1987); and (3) failed to develop the administrative record in regard to her psychological limitations.

The Court, cognizant of the deferential standard to which it must adhere, finds that the ALJ failed to properly evaluate the medical opinions of record. Because the weight assigned to this evidence sets the tone for evaluating the remaining evidence, the Court cannot conclude that the ALJ's decision is based on substantial evidence and it will reverse on this ground. The Court will only reach Plaintiff's specific contentions to the extent relevant.

### III. ANALYSIS

It is well established that an ALJ is required to consider and weigh every medical opinion contained in the record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); 20 C.F.R. § 404.1527(c). In determining what weight to give to an opinion, the ALJ evaluates several factors including, inter alia, the supportability and consistency of the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ need not expressly consider all of the relevant factors, but his or her decision must be "sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the…medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted).

Generally speaking, medical opinions from a claimant's treating physician should be given controlling weight if they are well-supported and consistent with the other substantial evidence of record, *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), whereas "the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). If a treating physician's medical opinion is not given controlling weight, the opinion is still entitled to deference and it must be weighed using the factors set forth in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6). In these circumstances, the ALJ is also required to weigh the prior administrative medical findings in accordance with 20 C.F.R. § 404.1527(c), and explain in his decision the weight he ultimately assigns to this evidence. *See* SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)[7] (explaining that ALJs may not ignore agency experts' findings and must explain in their decisions the weight given to the opinions). *See also* 20 C.F.R. § 404.1527(e) (stating that an explanation is not required if the ALJ gives controlling weight to a treating source's medical opinion).

In this case, the only medical opinions of record are found in the medical source statement provided by Dr. O'Sullivan and the assessments provided by the state agency physicians.[8] *See* SSR 06-03p, 2006 WL2329939, at *2 (August 9, 2006)[9] (explaining that for

---

[7] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263. Rescission effective for claims filed on or after March 27, 2017.

[8] Findings of fact made by agency physicians at the initial and reconsideration levels of review "become opinions at the administrative law judge and Appeals Council levels of administrative review." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). Similarly, RFC assessments made by "State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the [ALJ's] decision as medical opinions from non-examining sources about what the individual can still do despite his or her impairment(s)." *Id.* at *4.

[9] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263. Rescission effective for claims filed on or after March 27, 2017.

claims filed prior to March 27, 2017, only "acceptable medical sources," such as licensed physicians, can give medical opinions, establish the existence of a medically determinable impairment, and be considered treating sources). As discussed above, ALJ Meyer gave "limited weight" to Dr. O'Sullivan's opinion and expressed his general concurrence with the agency physicians' reconsideration assessments. In so doing, the ALJ explained that Dr. O'Sullivan's treatment records "do not support the severity of functional limitations opined [in the doctor's source statement]" (AR 23); that "there are no indications of examination of trigger points by Dr. O'Sullivan or pertinent laboratory testing consistent with Fibromyalgia treatment"; and that the doctor's opinion appears to be "largely based on subjective report[s] rather than objective findings." (AR 23-24). Inexplicably, though, it appears that ALJ Meyer relied upon this now rejected evidence to establish, at step two, that Plaintiff has the severe impairment of fibromyalgia.

Social Security Ruling 12-2p provides that the Commissioner may find that an individual has a medically determinable impairment of fibromyalgia if the individual has been diagnosed with the impairment by a licensed physician and the physician provides evidence which establishes that the individual has (1) a history of widespread pain; (2) at least eleven positive tender points on physical examination *or* suffers from "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions";[10] and (3) that other disorders were excluded as the cause of the individual's symptoms. SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012).

In 2013, Dr. O'Sullivan diagnosed Plaintiff with fibromyalgia syndrome (AR 222, 241) but, as ALJ Meyer points out, there is no evidence that the doctor tested Plaintiff for "tender

---

[10] The symptoms include, inter alia, muscle pain, fatigue or tiredness, headache, insomnia, depression, and thinking or memory issues. SSR 12-2p, 2012 WL 3104869, *n. 9 (July 25, 2012).

point" sites.  Accordingly, for the ALJ to find that Plaintiff has the severe impairment of fibromyalgia at step two of his decision, he must have determined that Dr. O'Sullivan provided evidence which established that Plaintiff suffered from widespread pain and repeated manifestations of fibromyalgia signs and symptoms.  SSR 12-2p, 2012 WL 3104869, at *3 (July 25, 2012).  However, when formulating Plaintiff's RFC, it appears that ALJ Meyer dismissed all fibromyalgia related evidence by vaguely averring to unsupported findings and a lack of objective evidence.  (AR 23-24).  While the ALJ may have had a reason(s) for his seemingly conflicting evidence evaluation, he failed to include any such explanation in his discussion of the evidence.  Moreover, as the Tenth Circuit has held, "the lack of objective test findings…is not determinative of the severity of [a claimant's] fibromyalgia."  *Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007) (unpublished).  Hence, the ALJ failed to provide a legally sufficient explanation for rejecting the treating-physician opinion of Dr. O'Sullivan.  *Robinson*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Additionally, ALJ Meyer neither explicitly weighed the agency supplied evidence nor explained his reasons for effectively adopting the RFC opinions therein contained.  The ALJ also failed to explain why he concurred with the agency physicians' reconsideration assessments but not, presumably, the assessments made at the initial level of review.  This distinction is especially odd given that the two sets of assessments are nearly identical.  *See* AR 48-58, 60-70.  Further, there is nothing in the record to indicate that the ALJ considered any of the factors set forth in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6) in connection with the agency evidence.  Regrettably, the Court "cannot simply presume that the ALJ applied the correct legal standards in considering" the agency physician's findings.  *Watkins*, 350 F.3d 1297, 1301 (10th Cir. 2003).

Due to the ALJ's failure to appropriately weigh and discuss the agency supplied evidence, as well as his failure to sufficiently address Plaintiff's fibromyalgia and associated symptoms, the Court is unable to "assess whether relevant evidence adequately supports the ALJ's conclusion…and whether he applied the correct legal standards to arrive at that conclusion." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Consequently, the Court will reverse the Commissioner's decision and remand for further proceedings consistent with this opinion.

On remand, the Commissioner is directed to properly weigh and explain the medical evidence provided by Dr. O'Sullivan and the state agency physicians. And, because the weight afforded to this evidence will have implications for the remaining evidence, the Commissioner is also directed to reevaluate Plaintiff's testimony and NP Montano's opinion evidence. In regard to the former, the Court notes, without deciding, that Plaintiff appears to have raised a meritorious argument as to the ALJ's consideration of her subjective allegations of pain and other symptoms.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing (Doc. 17) is hereby GRANTED.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**